S06A1029. BRODIE et al. v. CHAMPION et al.
S06X1030. FAUVER v. BRODIE.
(636 SE2d 511)

MELTON, Justice.

In the November 8, 2005 Sixth District Atlanta City Council election, Stephen Brodie lost by five votes to incumbent Anne Fauver. The City of Atlanta contracted with the Board of Registration and Elections (Board) to act as superintendent for the election. In tabulating the number of votes cast, the Board did not consider nine write-in ballots that had been submitted for unqualified candidates. See OCGA § 21-2-494. Brodie challenged the election in a lawsuit against Fauver and two members of the Board, Gloria Champion and Juanita Eber, asserting that OCGA § 21-2-494 was unconstitutional.[1] Fauver moved to dismiss the complaint. The trial court concluded that OCGA § 21-2-494 was constitutional, and in a separate order denied Fauver's motion to dismiss. In Case No. S06A1029 Brodie claims that the trial court erred in concluding that OCGA § 21-2-494 is constitutional. In Case No. S06X1030, Fauver appeals from the denial of her motion to dismiss. We affirm in both cases.

*Case No. S06A1029*

Brodie claims that OCGA § 21-2-494 is unconstitutional because it impermissibly allows the exclusion of votes for write-in candidates and because it does not require that voters be provided with notice that write-in votes for unqualified candidates would not be counted.

"The General Assembly is presumed to enact laws with full knowledge of the condition of the law and with reference to it, and the courts will not presume that the legislature intended to enact an unconstitutional law." (Footnotes omitted.) *Bd. of Public Ed. v. Hair*, 276 Ga. 575, 576 (1) (581 SE2d 28) (2003). In construing statutes, courts must look diligently for the intention of the General Assembly,

---

[1] Brodie filed the suit on his own behalf and on behalf of the nine unknown write-in voters. Brodie claims that, had the nine write-in ballots been counted, a run-off vote would have been required, as neither he nor Fauver would have received a majority of the total votes cast to be declared the outright winner. See OCGA § 21-2-285.1.

and will only declare legislation unconstitutional when it manifestly infringes upon a constitutional provision or violates the rights of the people. Id.

Under the Georgia Constitution, "conditions of eligibility to hold office for persons elected on a write-in vote . . . may be provided by law." Ga. Const. of 1983, Art. II, Sec. II, Par. III. Employing this constitutionally derived power, the General Assembly has provided in OCGA § 21-2-133 (a) that "[n]o person elected on a write-in vote shall be eligible to hold office unless notice of his or her intention of candidacy was filed and published . . . no later than seven days after the close of the municipal qualifying period for municipal elections in the case of a general election." It is undisputed here that the nine write-in votes were cast for individuals who were not eligible to hold office, as these people did not give proper notice of their intention of candidacy.

OCGA § 21-2-494 operates in tandem with OCGA § 21-2-133 by providing that "[t]he superintendent, in computing the votes cast at any election, shall compute and certify only those write-in votes cast for candidates who have given proper notice of intent to be write-in candidates pursuant to [OCGA §] 21-2-133." Because unqualified write-in candidates cannot assume office, counting the write-in votes for these unqualified candidates would be a futile act by the Board. The legislature is not required to impose such a meaningless function on the election superintendent. Indeed, if votes were counted for unqualified write-in candidates, it would lend legitimacy to candidates that the legislature has already determined to be ineligible for office. Thus, the same constitutional power that authorized the General Assembly to pass OCGA § 21-2-133 also authorized it to pass OCGA § 21-2-494. To conclude that the General Assembly does not have the constitutional power to regulate the counting of write-in votes for unqualified write-in candidates would be to undermine the power expressly provided to the General Assembly under the Constitution.

Moreover, irrespective of the above analysis, Brodie's argument that write-in votes for unqualified candidates were ignored by the Board is still incorrect. The Board did consider such write-in votes, as it was required to, in order to determine whether the votes had been cast for constitutionally qualified candidates. See OCGA § 21-2-494.

Brodie's reliance on *Thompson v. Willson*, 223 Ga. 370 (155 SE2d 401) (1967) in support of his argument is misplaced, as *Thompson* is distinguishable from the current case. There was no allegation in *Thompson* that the write-in candidate was not qualified to serve in the office for which he had received write-in votes. Thus, the fact that the write-in votes were not counted, despite the fact that candidate was eligible to serve, resulted in an unconstitutional restriction on

the elector's right to vote for the candidate of his choosing. See id. Here, however, no voters have been disenfranchised, as there is no dispute that the write-in candidates were not eligible to serve. Each voter was given the opportunity to vote for the candidate of his or her own choosing. However, for the vote to count, it had to have been cast for an individual who was constitutionally qualified to hold office. Otherwise, the write-in vote was considered a nullity. Brodie's argument to the contrary notwithstanding, the result here is consistent with our holding in *Thompson.* The legislature properly exercised its power when it limited the counting of write-in votes to votes cast for qualified write-in candidates.

We further find no merit to Brodie's argument that OCGA § 21-2-494 is unconstitutional for failing to require that voters be given notice that write-in votes for unqualified write-in candidates would not be counted. Indeed, OCGA § 21-2-494 itself expressly states that "only those write-in votes cast for candidates who have given proper notice of intent to be write-in candidates" will be counted. "All persons are charged with knowledge of the law." (Citation omitted.) *Nix v. Long Mountain Resources,* 262 Ga. 506, 509 (3) (422 SE2d 195) (1992). The statute itself provides voters with all the information necessary.

### *Case No. S06X1030*

Fauver contends that the trial court erred in denying her motion to dismiss Brodie's lawsuit, because Brodie failed to name the Board as the proper party defendant. Specifically, she contends that since the Board was under contract with the City of Atlanta to act as superintendent, the Board was the proper party defendant pursuant to OCGA § 21-2-520 (2).[2] Instead of specifically naming the Board, Brodie named the Director of the Board, Champion, and the Chairperson of the Board who signed the Certification of Returns for the election, Eber, in his lawsuit.

Pretermitting the question whether Brodie should have specifically named the Board as superintendent in his lawsuit, the omission here did not subject his case to dismissal. In an election contest, "the failure to name the proper parties is an amendable defect, correctable

---

[2] According to OCGA § 21-2-520 (2), a "defendant" in an election contest can be:
(A) The person whose nomination or election is contested;
(B) The person or persons whose eligibility to seek any nomination or office in a run-off primary or election is contested;
(C) The election superintendent or superintendents who conducted the contested primary or election; or
(D) The public officer who formally declared the number of votes for and against any question submitted to electors at an election.

by the parties or upon the court's own motion." *Hanson v. Wilson*, 257 Ga. 5, 6 (2) (354 SE2d 126) (1987). Thus, the trial court did not err in denying Fauver's motion to dismiss.

*Judgments affirmed. All the Justices concur.*

DECIDED OCTOBER 16, 2006.

*Lord, Bissell & Brooks, Michael V. Coleman, Paul T. Kim, Michael P. Bruyere,* for Brodie et al.

*Carmen R. Alexander, Larry W. Ramsey, Jr.,* for Champion et al.

*Holland & Knight, Robert S. Highsmith, Jr., Heather A. Calhoun, Ashe, Rafuse & Hill, R. Lawrence Ashe, Jr.,* for Fauver.